UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED
2010 MAY 21 AM 8:20
CLERK US DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY_____
          DEPUTY

| | | |
|---|---|---|
| SHARON WAHLSTROM, | § | |
| Plaintiff | § | |
| | § | CIVIL ACTION |
| VS. | § | NO. **A10CA348 SS** |
| | § | |
| FLEXTRONICS AMERICA, LLC, | § | |
| Defendant | § | JURY REQUESTED |
| | § | |

## ORIGINAL COMPLAINT

### Jurisdiction and Venue

1. This action alleging sex discrimination and retaliation arises under the Civil Rights Acts of 1964 and 1991 as amended, and codified at 42 U.S.C. §2000e et seq. (Title VII). The Court has jurisdiction under the Fourteenth Amendment to the U.S. Constitution, as codified in the remedial legislation listed above and other federal statutes.

2. All conditions precedent have been exhausted and/or performed prior to the filing of this original complaint: 1) charges of sex discrimination and retaliation were filed with the Texas Workforce Commission Civil Rights Division (TWC-CRD), within 300 days of the date of the adverse employment actions complained of herein for which recovery is sought (notwithstanding Wahlstrom's claims for continuing action); a federal notice of right to sue letter was received by Wahlstrom from the EEOC no earlier than February 22, 2010; and this original complaint was filed in United States District Court within ninety (90) days of receipt of that right to sue letter. See Exhibit A, which contains copies of Wahlstrom's charge, right to sue letter and date-stamped envelope.

3. Further, jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331, 1343, 1367 and 42 U.S.C. §2000e-5(f)(3).

4. The acts or omissions, which serve as the basis for this cause of action, occurred in Travis County, State of Texas and in this Division of the Western District of Texas, therefore venue is proper in this Court. 42 U.S.C. §2000e-5(f)(4) and 28 U.S.C. §1391(b) and (c).

## Parties

5. Sharon C. Wahlstrom ("Wahlstrom") is a natural person whose primary residence is located in Williamson County, Texas. Wahlstrom, as a Pro Se Plaintiff, may be contacted at 105 Twilight Way, Hutto, Texas 78634, 512-552-4352, scwahlstrom0629@gmail.com.

6. Defendant, Flextronics America, LLC ("Flextronics"), is a foreign limited liability company doing business in Austin, Travis County, Texas and may be served process via its registered agent for service of process, CT Corporation System, 350 N. St. Paul St., Ste. 2900, Dallas, Texas 75201-4234.

## STATEMENT OF THE CASE

7. Wahlstrom brings this action under Title VII of the Civil Rights Act of 1964, as amended in 1991, 42 U.S.C. §§2000e et.seq.

8. Wahlstrom complains of Flextronics' extended periods of disregard for her complaints of sexual harassment by co-worker, George Millard, who despite being told by Wahlstrom many times to cease all non-work-related communications without exception, engaged in incessant compliments, gifts, attention, communications, created false internet persona to engage in communications with Wahlstrom, impersonated Wahlstrom's acquaintances to engage in communications with Wahlstrom and Wahlstrom's mother, broke into and altered

Wahlstrom's internet account, stalked, and wrote frightening letters, all of which were pervasive enough to establish a hostile work environment.

9. Despite Wahlstrom's multiple complaints to her supervisors seeking protection and relief over a period of more than a year, Flextronics either took no action, acted only after the police acted to protect Wahlstrom, were unreasonable and ineffective in whatever actions they allegedly took, or engaged in efforts to keep Wahlstrom from complaining and/or denied their lack of action in response to Wahlstrom's complaints. Rather than investigate and provide Wahlstrom with a minimum level of protection, Flextronics told Wahlstrom that she had "no proof" and that Mr. Millard was a "valuable employee" forcing Wahlstrom to return to the hostile work environment without relief. This type of response from Flextronics to Wahlstrom's complaints of sexual harassment are such that any reasonable person would be deterred from asserting her rights to be free from sexual harassment knowing that such action would follow.

10. Wahlstrom eventually went to the police on July 13, 2009 for protection and obtained some relief when Mr. Millard was arrested at Flextronics on July 24, 2009 for harassment, however, this relief did not come from Flextronics, but from the police.

11. Although Flextronics reacted by beginning an investigation and allowing Wahlstrom to work from home during this period, Flextronics continued to disregard the safety and wellbeing of Wahlstrom. That is, even though Flextronics was aware that Mr. Millard was no longer in custody and could obtain access to the Flextronics facility, Flextronics still required that Wahlstrom return to work at the Flextronics worksite even though Flextronics could not guarantee her safety. Flextronics communicated to Wahlstrom she could be escorted from and to her car, but would not assure her safety.

3

12. Wahlstrom has sustained emotional harm, humiliation, loss of enjoyment of life, mental anguish, loss of career opportunity and other damages.

## FACTUAL ALLEGATIONS

13. Wahlstrom, a female employee, has been and is qualified for her position of employment as a buyer at Flextronics.

14. Wahlstrom began employment with Flextronics on March 12, 2007.

15. Wahlstrom knew another employee, George Millard, who was also a buyer at Flextronics.

16. Wahlstrom and Millard were acquaintances but were not romantically involved.

17. Millard began to communicate his intentions that Wahlstrom become more than just friends with him on February 14th, 2007. Wahlstrom informed Millard they would never be in a romantic relationship; nothing more than platonic.

18. Wahlstrom attempted to diffuse Millard's advances and ardour over a period of 1 ½ years.

19. Millard consistently ignored Wahlstrom's communications to stop his personal advances and gifts.

20. Wahlstrom reported to her supervisor in late July 2008 that Millard was harassing her seeking a romantic relationship and that she planned to inform Mr. Millard that he cease all non-work-related communications with her which occurred on August 1, 2008. Wahlstrom's supervisor took no action at that time.

21. On August 1, 2008, Wahlstrom, in no uncertain terms, communicated to Millard that they were not in a relationship, that they would not ever be in a relationship, and that he must

4

stop all non-work-related communications with her and informed her manager immediately afterwards of this communication.

22. Millard did not stop his harassing behavior, which included: incessant compliments, gifts, attention, communications, created false internet persona to engage in communications with Wahlstrom, impersonated Wahlstrom's acquaintances to engage in communications with Wahlstrom, stalking, and frightening letters.

23. Wahlstrom continued reporting numerous times to her supervisor this continued harassment and disregard of her requests that it cease and that she be respected as a co-worker only. Wahlstrom is not aware if any action was taken, but Millard appeared to stop overtly harassing her after insisting her supervisor question Mr. Millard on 10/30/08 about a message taped to Wahlstrom's computer monitor that morning.

24. However, around October or November of 2008, Wahlstrom began to receive emails from two people, one she did not know and another that was ostensibly a prior acquaintance of hers. These email communications continued over a period of months. Given the nature of the communications (referring to Millard directly and also veiled analogous circumstances to Millard which "advised" Wahlstrom to "return" to Millard) and the fact that Wahlstrom learned that her prior acquaintance that she was ostensibly communicating with had in fact not written any of the emails that were written in his name, Wahlstrom reasonably concluded that Millard had been perpetrating a fraud on her using the internet, Flextronics computers and computer systems during office hours and remotely after office hours. Wahlstrom suspected that the fictitious female persona was Millard in February 2009 and learned from her friend in June 2009 that he had not written any of the emails that were written in his name.

25. Wahlstrom again reported the harassment to her Flextronics departmental manager on March 2, 2009. Rather than conducting an investigation into the allegations, Flextronics' representative became visibly upset with Wahlstrom, told her that Millard was a "valuable employee" to them and that she had "no proof." Wahlstrom was sent back to work with a clear indication that she and her well-being were less valuable to Flextronics than Millard and that she would have to continue to endure the violations of being harassed, stalked in person and online and defrauded emotionally as well as having to continue living in fear of what Millard might do next.

26. Within a couple of days, Wahlstrom's mother also reported to Flextronics that she was receiving emails from a Flextronics server that were nominally coming from a female with Wahlstrom's neighbor's name, but that Wahlstrom's mother did not know and this neighbor did not write. Flextronics conducted an investigation into only one of the emails and reported that the results of the investigation were inconclusive.

27. Wahlstrom was vulnerable, scared, harassed, unprotected, and disregarded.

28. Throughout this period Wahlstrom was faced with the added pressure of continuing to perform her duties above standards as she became legitimately concerned for her employment position given her manager's statement in support of Millard and his value to the company causing Wahlstrom even greater emotional harm and work-related stress requiring her to work longer hours than would have been required under less hostile working conditions.

29. Wahlstrom eventually could not take the pressure any more. She escalated her complaints to the site HR Department, Corporate and then went to the police for protection. In contrast to Flextronics' response of repeatedly doing nothing for nearly a year, the police having been presented with the same information that Flextronics received, assigned a detective, took a

sworn statement from Wahlstrom, and arrested Millard on a charge of harassment on July 24, 2009. All this occurred within the period of less than two weeks.

30. Flextronics eventually initiated their own investigation into Wahlstrom's complaints against Millard and her supervisors' failure to address those complaints for almost a year after she had first reported Millard's harassment.

31. The Austin Police informed Wahlstrom that a restraining order was entered ordering Millard to refrain from any contacting Wahlstrom.

32. Wahlstrom was informed by the Travis County Jail that Millard was being released from jail.

33. Wahlstrom was afraid for her safety, if not her life, and requested that Flextronics allow her to work from home given that Flextronics had no way to insure her safety at the Flextronics facility. Flextronics granted Wahlstrom that request informing her that she would be allowed to work from home pending the results of their investigation.

34. During her time working at home, Flextronics' representatives would call Wahlstrom as part of its investigation, and rather than investigating her complaints of harassment against Millard and disregard from Flextronics' management, Wahlstrom was forced to defend herself against false, if not ludicrous, allegations that had never before been made against her and which had no basis in fact. Additionally, Wahlstrom had to endure multiple attempts by Flextronics' representatives to "re-write" the history of Flextronics' supervisors and managers lack of appropriate response to her complaints.

35. Despite Flextronics agreement to allow Wahlstrom to work from home pending the results of its investigation, Wahlstrom was forced to return to the Flextronics facility on August 25, 2009 prior to the end of its investigation and while Millard was not in protective custody.

36. This caused additional stress and fear in Wahlstrom that she was forced to endure even though she made Flextronics aware of the effect that this circumstance was having on her and her concerns of coming back to report to the same manager who she had also levied allegations against in her complaint submitted on 7/13/09 to Flextronics Corporate HR.

37. Despite having substantial evidence with which to work with, Flextronics maintained that it was not able to substantiate that Millard had fraudulently created email identity used to communicate with Suzanne Wahlstrom, Wahlstrom's mother with which to slander and harass Wahlstrom.

38. Flextronics engaged in further retaliatory actions against Wahlstrom, including the following: not taking timely action to investigate Wahlstrom's complaints against Millard; not taking action to stop Millard's harassment of Wahlstrom; not conducting a reasonable investigation into Wahlstrom's complaints against Millard; not ensuring the Wahlstrom would be safe in the work place; forcing Wahlstrom to work at the Flextronics facility rather than at home; giving a disproportionate amount of Millard's work to Wahlstrom once Millard was removed from the work place; creating and/or promoting a hostile work environment that resulted in Wahlstrom not being as productive as she otherwise would have been, requiring Wahlstrom to take leave more often, use up her PTO hours, need more doctor visits, and pay for and take more medication all due to the added stress Flextronics was putting on Wahlstrom.

## DAMAGES

39. Because of statutorily and common law derived impermissible acts of Flextronics and its representatives as discussed above, Wahlstrom has suffered loss of income, loss of benefits, loss of career opportunity, loss of career investment and loss of advancement. As a consequence of the outrageous, knowing, malicious, and/or reckless actions by Flextronics,

Wahlstrom has suffered humiliation, loss of standing in the community, emotional pain and suffering, inconvenience, loss of enjoyment of life, irritation and mental anguish. Wahlstrom seeks compensatory, equitable, and punitive damages as well as attorney's fees and costs and pre and post judgment interest in the maximum amounts allowed by law.

## RELIEF REQUESTED

Paragraphs one (1) through thirty-nine (39) of this complaint are incorporated by reference and made a part of Relief One through Relief Six, inclusive.

## EQUITABLE RELIEF

### Relief One

Wahlstrom has no plain, adequate or complete remedy at law to redress the wrongs alleged, and this suit for injunctive relief and equitable and compensatory damages is the only means of securing adequate relief. Wahlstrom suffered, and is now suffering and will continue to suffer irreparable injury from the policy, practice, custom and usage of Flextronics as set forth herein until and unless enjoined by the Court. 42 U.S.C. 2000e et. seq. Additionally, the Court is requested after notice and hearing to order Flextronics to conduct seminars and other counseling of employees as part of an educational sensitivity and anti-sexual harassment/discrimination and anti-retaliation training processes.

### Relief Two

Wahlstrom seeks an award of back pay for the loss of income as a result of the discriminatory, retaliatory and/or hostile work environment conduct of Flextronics and its representatives during Wahlstrom's employment and as a result of her experience, and subsequent retaliatory conduct.

### Relief Three

Wahlstrom seeks awards of pre- and post-judgment interest on any amounts awarded to her.

## LEGAL RELIEF

### Relief Four

Under 42 U.S.C. §§ 2000e et seq., Wahlstrom is entitled to compensatory, expectation and/or consequential damages.

### Relief Five:

Under 42 U.S.C. §2000e et seq., Wahlstrom is entitled to punitive, damages due to the malicious and/or recklessly indifferent actions by Flextronics to their abridgment of Wahlstrom's rights under this statute.

### Relief Six:

Under 42 U.S.C. §§ 2000e et seq., Wahlstrom is entitled to reasonable attorney's fees and costs.

## PRAYER FOR RELIEF

Wahlstrom requests the Court to cause Flextronics to be cited to appear and answer in this Court, and that upon final hearing, the Court grant to Wahlstrom as follows:

1. Grant Wahlstrom injunctive relief enjoining Flextronics, its agents, successors, employees, and those acting in concert with them or at their direction from continuing to abridge the rights of Wahlstrom through harassment, retaliation, and/or disparate treatment;

3. Grant Wahlstrom all equitable damages including lost pay and profits, lost back pay, front pay, benefits and profits;

4. Grant Wahlstrom compensatory damages for Flextronics's acts of discrimination, retaliation and hostile work environment against her;

5. Grant Wahlstrom prejudgment and post-judgment interest in the highest amount allowable by law;

6. Grant Wahlstrom punitive damages for Flextronics's malicious and/or reckless acts of indifference to Wahlstrom's complaints;

7. Grant Wahlstrom reasonable attorney's fees, together with her costs; and

8. Such other and further relief as appears just and equitable in the circumstances of this case.

Respectfully submitted,

*Sharon C. Wahlstrom*
Sharon C. Wahlstrom
105 Twilight Way
Hutto, Texas 78634
(512) 552-4352
scwahlstrom0629@gmail.com
PRO SE PLAINTIFF